IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER MALDONADO, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 23-CV-4446 |
| | : | |
| SGT. JODI WENDLING, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**GOLDBERG, J.**                                                    **FEBRUARY 11, 2025**

*Pro se* Plaintiff Christopher Maldonado, an inmate currently confined at SCI-Somerset, commenced this civil action alleging his constitutional rights were violated when Defendants failed to protect him from violence by another inmate.  Currently before the Court are:  (1) Defendants Lancaster County Prison, Warden Cheryl Steberger, Sergeant Jodi Wendling, and Sergeant Byron Germer's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 38) (the "Motion"); (2) Maldonado's Response in opposition (ECF No. 49); and (3) Defendants' Reply thereto (ECF No. 54).  Maldonado also filed an unauthorized Third Amended Complaint ("TAC") (ECF No. 51), which Defendants have moved to strike.  (ECF No. 55.)

As set forth more fully below, Defendants' Motion will be granted in part and denied in part.  Defendants will be directed to file an Answer as to the failure to protect claim.  All other claims in the SAC will be dismissed.  Maldonado's TAC will be stricken as unauthorized.[1]

---

[1] Along with the TAC, Maldonado filed an additional prison account statement and a motion to proceed *in forma pauperis*.  (ECF Nos. 52, 53.)  The motion to proceed *in forma pauperis* (ECF No. 53) will be denied as moot as Maldonado already has been granted this relief.

## I.    PROCEDURAL HISTORY

Maldonado initiated this civil action on November 6, 2023, while he was housed at Lancaster County Prison ("LCP"). (*See* ECF No. 1, 2.)  He claimed that his constitutional rights were violated by Sergeants Wendling and Germer when he reported to them that LCP inmates were plotting to harm him, but Defendants disregarded this risk to his safety because Maldonado did not know who would attack him or when the attack would occur. (*See* ECF No. 2 at 4-5.[2]) According to Maldonado, he was denied protective custody and administrative custody. (*Id.* at 5.) Maldonado claimed that he was subsequently attacked in his cell by inmate Ziair Collimore on October 30, 2023, and suffered concussion, as well as a laceration on his head that required stiches. (*Id.*)

After the Court granted Maldonado *in forma pauperis* status and directed service of the initial Complaint (*see* ECF No. 8), Defendants Wendling and Germer waived service and filed a motion to dismiss pursuant to Rule 12(b)(6). (ECF Nos. 12, 13, 15).  Maldonado filed a response to that motion and also filed a motion for leave to amend the Complaint. (ECF Nos. 17, 18.)  By Order dated March 7, 2024, the Court granted Maldonado's motion for leave to file an amended complaint. (ECF No. 19.)  He subsequently filed two motions for appointment of counsel, as well as an Amended Complaint.[3]  (ECF Nos. 20, 21, 24.)  Defendants then filed a motion to dismiss the Amended Complaint. (ECF No. 22.)

By Memorandum and Order dated July 23, 2024, the Court granted Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) and dismissed the Amended Complaint

---

[2] The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

[3] Maldonado's motions for appointment of counsel were denied without prejudice to his right to renew the request should the case proceed to the discovery stage, or to the Court's right to appoint counsel *sua sponte* if circumstances warranted it at a future date. (*See* ECF No. 25.)

without prejudice.  (ECF Nos. 30, 31.)  The Court construed the Amended Complaint as primarily

claiming that Defendants violated his constitutional rights by failing to protect him from violence

by another inmate.  (*See* Am. Compl. at 3-5.)  The Court determined that Maldonado's allegations

were insufficient to state a plausible failure to protect claim because he failed to plead sufficient

facts regarding the basis for his fear and how he formed the belief that he was in danger, and

because he failed to allege sufficient facts regarding what he communicated to the Defendants in

order to evaluate whether they acted with deliberate indifference.  (*See* ECF No. 30 at 7-8.)  The

Court also determined that any claim against Defendants Wendling and Germer based on

allegations of gross negligence was barred by the provisions of Pennsylvania's Political

Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541-50.  (*See id.* at 10-11.)  Additionally, the

Court concluded that the official capacity claims were not plausible.[4]  (*See id.* at 8-10.)  Maldonado

was granted leave to file a Second Amended Complaint ("SAC").  (*See* ECF Nos. 30, 31.)

On August 5, 2024, Maldonado filed a SAC, naming as Defendants Lancaster County

Prison, Warden Cheryl Steberger, Jodi Wendling, and Byron Germer.[5]  (ECF No. 32.)  Defendants

filed the pending Motion to dismiss the SAC on August 15, 2024, and Maldonado was directed to

file a response thereto.  (ECF Nos. 38, 39.)  Although he filed several discovery motions (*see* ECF

---

[4] The Court further found that, to the extent Maldonado sought to present a First
Amendment retaliation claim based on his allegation that "since I had previous law suits against
the jail already . . .   I was ignored denied safety," his allegations were far too undeveloped as
pled.  (*See* ECF No. 30 at 5 n.4.)

[5] Service of the SAC was waived by Defendants Lancaster County Prison and Warden
Steberger.  (ECF Nos. 35, 36.)  Nonetheless, a prison or jail, such as LCP, is not legally a
"person" subject to liability under § 1983.  Accordingly, LCP is not an appropriate Defendant in
this case and Maldonado's claims against it will be dismissed.  *See Johnson v. Russell*, No. 21-
4821, 2022 WL 742734, at *3 (E.D. Pa. Mar. 11, 2022) ("The claims against LCP are dismissed
with prejudice because a jail is not a 'person' under § 1983.") (citing  *Cephas v. George W. Hill
Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010).

Nos. 40, 41, 44), Maldonado initially did not respond to the motion to dismiss. Accordingly, Maldonado was ordered to show cause why this matter should not be dismissed for failure to prosecute. (ECF No. 48.) Maldonado filed a response to the Order to Show Cause, explaining that he had been housed in the RHU and did not have access to his legal paperwork. (ECF No. 50.) Maldonado also filed a Response to Defendants' Motion to Dismiss the SAC, which itself is titled as a motion. (*See* ECF No. 49.) Defendants' motion to dismiss is ripe for review.

## II.    FACTUAL ALLEGATIONS

Taking the allegations in the SAC as true, the relevant facts are as follows: Maldonado asserts that while he was housed on the "G-2 Housing Unit High Profile Unit" at LCP as a pretrial detainee on October 30, 2023 "approximately on 2ⁿᵈ shift," Defendants Wendling and Germer failed to protect him from a physical assault by another inmate. (SAC at 4-5.) Maldonado claims that he asked Defendants Wendling and Germer "on Axon body cam for help to prevent an assault on happening to me on G-2 housing unit." (*Id.* at 5.) He alleges that "word got to me about a plot against me to be harmed by an inmate but I could not give a name so both [Sergeants] took me off P/C (presumably "protective custody") and put me back in my old cell because I could not give a name." (*Id.*) Maldonado contends that the "jail[']s policy or custom of being able to give a name of an attack[er] caused [his] injury . . . since [he] did not exactly know who would assault [him] exactly." (*Id.* at 4.)

According to Maldonado, on "9-30-2023 [sic] murder suspect Ziair Collimore entered my cell of over words by him calling me a rat." (*Id.* at 5.) Maldonado claims that Collimore entered his cell after Maldonado "told him about himself" and sucker-punched Maldonado from behind. (*Id.*) After being punched and kicked in the head, Maldonado suffered a concussion, a swollen,

black eye, and required stiches for a laceration above his eyebrow.  (*Id.*)  Maldonado asserts that

"if they would of just kept me on P/C this could of [sic] been avoided."  (*Id.*)

As alleged, after Collimore and Maldonado completed their "hole time," Collimore was

given a block worker job and Maldonado was put on "HABA" for his safety.  (*Id.*)  Maldonado

alleges that the "23/1 lockdown status" he received was "cruel and unusual punishment."  (*Id.*)

Maldonado suggests that he was punished for the attack even though he was the victim, while

Collimore was given a job as a block worker after they were both released from segregated

housing.  (*Id.*)

Maldonado also indicates in the SAC that he seeks to present a First Amendment retaliation

claim against Warden Steberger.  (*Id.* at 4.)  In support of this assertion, Maldonado alleges only

that he was "denied safety" because he "had other law suits against the Warden, Michael Fischer,

William Hinton and Megan Kreider."  (*Id.* at 5.)  As relief for his claims, Maldonado seeks

damages.  (*Id.*)

## III.  STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint."

*Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule

12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*,

550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the

plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). Additionally, since Maldonado is proceeding *in forma pauperis*, the Court may independently screen his SAC and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

IV.    **DISCUSSION**

Maldonado again asserts constitutional claims against Defendants under § 1983, alleging that Defendants failed to protect him from violence by another inmate, housed him in conditions that amounted to cruel and unusual punishment in violation of the Eighth Amendment, and retaliated against him in violation of the First Amendment. (*See* SAC at 3-5.) He brings these claims against Defendants in their individual and official capacities. Defendants move to dismiss the SAC in its entirety.

A.    **Failure to Protect**

Because Maldonado was a pretrial detainee when the underlying incidents occurred, his claims are governed by the Due Process Clause of the Fourteenth Amendment. *Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 2005) (holding that the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees). The rights afforded pretrial detainees under the Due Process Clause are at least as great as those afforded by the Eighth Amendment. *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1067 (3d Cir. 1991). Therefore, courts analyzing cases by pretrial detainees apply the same standard of deliberate indifference applied to the Eighth Amendment cases. *Id.*

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.*

To state a plausible failure to protect claim, Maldonado must allege that the conditions in which he was incarcerated posed a substantial risk of serious harm, that prison officials acted with deliberate indifference to that substantial risk of serious harm, and that the official's deliberate indifference caused harm. *See id.*; *Hamilton*, 117 F.3d at 746; *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020); *see also Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (*per curiam*) (applying deliberate indifference standard to failure to protect claim asserted by pretrial detainee). Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). For his claim to be plausible, Maldonado must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id.* at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id.* at 125.[6]

Defendants argue that Maldonado's allegations are insufficient to state a plausible claim because Maldonado was not incarcerated under conditions posing a substantial risk of serious harm. (ECF No. 32-2 at 5.) They contend that Maldonado did not articulate who would attack him or provide prison officials with further information regarding the alleged "plot." (*Id.* at 5-6.) Defendants also assert that the facts alleged by Maldonado indicate that the altercation was instigated by Maldonado. (*Id.* at 6.) They argue that because Maldonado could not provide Defendants with the name of his alleged attacker or those plotting against him, Defendants were

---

[6] Ordinary negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (*per curiam*) (holding that allegations did "not state a claim of a constitutional violation under the Eighth Amendment when they asserted a simple negligence claim at most"); *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 329 (3d Cir. 2020) ("Deliberate indifference requires significantly more than negligence."); *Harley v. Warren*, No. 13-7656, 2017 WL 4422412, at *3 (D.N.J. Oct. 4, 2017) ("Negligent failure to prevent an attack by an inmate is insufficient to establish violation of the Eighth Amendment.").

not deliberately indifferent to Maldonado's health and safety, and any alleged deliberate indifference did not cause the injuries to Maldonado that were, instead, the result of Maldonado "telling inmate Collimore 'about himself.'"  (*Id.* at 7-8.)

The Court is not persuaded by Defendants' argument.  Maldonado alleges that he informed Defendants Wendling and Germer that there was a plot to attack him, and that he was on protective status but was removed from that status because he was unable to provide Defendants with the name of the individual who was plotting to attack him.  He contends that if Defendants Wendling and Germer had simply kept him on protective status, rather than returning him to his regular cell when he could not provide the identity of the potential attacker, he would not have been injured. Taking these allegations as true and the reasonable inferences they support in Maldonado's favor, Maldonado alleged sufficient facts to proceed on the failure to protect claim against Defendants Wendling and Germer at this stage of the litigation.  *See, e.g., Aruanno v. Johnson*, 683 F. App'x 172, 175-76 (3d Cir. 2017) (*per curiam*) (finding that pretrial detainee  plausibly stated a claim for relief under the deliberate indifference standard).  Although Defendants argue that Maldonado's claim fails because he did not provide the identity of his potential attacker, they have offered no Circuit precedent in support of this proposition and the Court declines to adopt such a specific pleading requirement.  Furthermore, Defendants' argument that this claim should be dismissed because the attack was, in fact, instigated by Maldonado, runs afoul of the Court's duty to accept the factual allegations of the SAC as true at this stage of the case.  Thus, the Court will deny the motion to dismiss the failure to protect claim against Defendants Wendling and Germer and will allow this claim to proceed to discovery.

### B.   Cruel and Unusual Punishment

Maldonado seeks to present an Eighth Amendment claim based on the assignment of "HABA" status after he was attacked by Collimore. (*See* SAC at 3, 4, 5.) Maldonado alleges that after he did his "hole time," he was "put on HABA" for his safety "under 23/1 lockdown status which is cruel and unusual punishment." (*Id.* at 5.) Defendants move to dismiss this claim. (*See* ECF No. 38-2 at 8-9.)

Although Maldonado references the Eighth Amendment, because he was a pretrial detainee when the events described in the SAC occurred, Maldonado's claim regarding "HABA" status falls under the Due Process Clause of the Fourteenth Amendment. *Hubbard*, 399 F.3d at 166. In any event, Maldonado has failed to plead a plausible claim based on the facts alleged.

To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" violate the Fourteenth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (internal quotations omitted).

Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). To satisfy the subjective

10

component of the analysis in this Circuit, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Seiter*, 501 U.S. at 298-99; *see also Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). "A defendant may be liable if he is aware of a condition that poses an excessive risk and he fails to 'adequately respond to that risk.'" *Bakhtiari v. Madrigal*, 841 F. App'x 457, 459-60 (3d Cir. 2021) (*per curiam*) (quoting *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019)).

Maldonado's Fourteenth Amendment claim based on the time he was assessed HABA status is not plausible as pled. Putting aside whether the assignment of HABA status under the circumstances presented here objectively amounted to punishment, Maldonado has not pled plausible facts in support of the subjective component of the analysis. In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Maldonado does not allege how Defendants Wendling and Germer were personally involved in subjecting him to the conditions he endured while on this status, much less that they acted with deliberate indifference. Furthermore, to the extent that Maldonado seeks to present this claim against Warden Steberger simply due to her high-ranking position at LCP, this is not sufficient basis to state a plausible claim against her. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677); *see also Saisi v. Murray*, 822 F.

App'x 47, 48 (3d Cir. 2020) (*per curiam*) (noting that generalized allegations that a supervisory

defendant is "in charge of" or "responsible for" an office or agency are insufficient to allege

personal involvement in an underlying constitutional violation); *Ogrod v. City of Philadelphia*,

598 F. Supp. 3d 253, 274 (E.D. Pa. 2022) (finding plaintiff, who only alleged that supervisor-

defendant was a Lieutenant in the Special Investigations Unit and that other defendants reported

to him, failed to support a plausible claim for supervisory liability); *Zigler v. Warren*, No. 21-

19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable

for the unconstitutional conduct of his employees solely because he is a supervisor.").[7]

Additionally, pleading that a group of individuals violated Maldonado's rights, without specifying

what each individual did or did not do that violated his rights, is insufficient to put a defendant on

notice of the conduct with which he is charged and does not state a plausible claim. *See Lawal v.*

*McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of

the word "Defendants" failed to adequately plead which specific defendant engaged in the specific

---

[7] Rather, "[s]uits against high-level government officials must satisfy the general
requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).
There are "two general ways in which a supervisor-defendant may be liable for unconstitutional
acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir.
2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor
may be liable if he or she "'with deliberate indifference to the consequences, established and
maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.*
(quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.
2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he
or she participated in violating the plaintiff's rights, directed others to violate them, or, as the
person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional
conduct." *Barkes*, 766 F.3d at 316.
　　Maldonado has not alleged a claim of supervisory liability against Warden Steberger.  He
has not plausibly alleged that Warden Steberger, with deliberate indifference to the
consequences, established and maintained a policy, practice or custom which directly caused the
constitutional harm, or that Warden Steberger participated in a constitutional violation, directed
others to so, or, as the person in charge, had knowledge of and acquiesced to a constitutional
violation.

conduct alleged by the plaintiff); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207).  Accordingly, Defendant's motion to dismiss Maldonado's claim based on the assignment of HABA status will be granted and the claim will be dismissed.

### C.    Retaliation

Defendants also argue that Maldonado's First Amendment retaliation claim should be dismissed because he fails to allege how Warden Steberger retaliated against him.  (ECF No. 38-2 at 9-10.)   Indeed, while Maldonado indicates in the SAC that he seeks to present a First Amendment retaliation claim against Warden Steberger, (*see* SAC at 4), he alleges only that because he "had other law suits against the Warden, Michael Fischer, William Hinton and Megan Kreider" he was "denied safety," (*see id.* at 5).

Maldonado's allegations of retaliation are conclusory.  As the Court advised Maldonado in the July 23, 2024 Memorandum, to state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  A prisoner's filing of a grievance or lawsuit constitutes constitutionally protected conduct.  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than de minimis.'"  *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original).  "To establish

13

the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). The allegations in the SAC fail to meet this standard. Maldonado does not offer sufficient factual support for his conclusion that he suffered an adverse consequence because he engaged in constitutionally protected conduct. *See, e.g., Fritz v. Cnty. of Westmoreland*, No. 22-2999, 2024 WL 808970, at *3 (3d Cir. Feb. 27, 2024) (affirming dismissal of First Amendment retaliation claim where plaintiff's allegations as to causation were conclusory and speculative), *cert. denied sub nom. Fritz v. Westmoreland Cnty., PA*, No. 24-106, 2024 WL 4427230 (U.S. Oct. 7, 2024); *Miller v. Metzger*, No. 21-2223, 2022 WL 4820322, at *2 (3d Cir. Oct. 3, 2022) (*per curiam*) (affirming dismissal of First Amendment retaliation claim where plaintiff failed to provide sufficient factual matter showing that alleged protected activity was a substantial or motivating factor in the decision to discipline him); *McGinnis v. Hammer*, 751 F. App'x 287, 292 n.2 (3d Cir. 2018) (*per curiam*) ("McGinnis' conclusory allegation that his grievance was a substantial motivating factor in Hammer's decision to deny ibuprofen fails to reflect more than a sheer possibility that a defendant has acted unlawfully.") (citing *Oliver v. Roquet*, 858 F.3d 180, 192 (3d Cir. 2017)). For the foregoing reasons, Maldonado's retaliation claim against Warden Steberger will be dismissed.[8]

---

[8] In his Response to Defendants' motion to dismiss, Maldonado suggests that "due to retaliation from the administration staff," Collimore was "rewarded" after the attack with a block job, while Maldonado was punished by being placed in "restrictive isolation." (ECF No. 49 at 1.) This allegation, which is not stated in the SAC, also is generalized and conclusory and fails to allege a plausible retaliation claim against a named Defendant.

### D.      Official Capacity Claims

Maldonado checked the boxes on the form complaint to indicate that he asserts his claims against Defendants in their official capacities, as well as in their individual capacities.  (*See* SAC at 2-3.)  Official capacity claims are indistinguishable from claims against the entity that employs the officials.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Thus, Maldonado's claim against Defendants in their official capacities is, in essence, a claim against Lancaster County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative

15

link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting

*Bielevicz*, 915 F.2d at 850). Allegations that simply paraphrase the standard for municipal liability

are too vague and generalized to support a plausible claim. *See, e.g., Szerensci v. Shimshock*, No.

20-1296, 2021 WL 4480172, at \*7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation,

which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983

liability under *Monell*." (citing cases)).

To the extent Maldonado seeks damages from Defendants in their official capacities, he

has failed to allege facts that support *Monell* liability. Maldonado only alleges in a conclusory

fashion that the prison had a policy of denying protection to inmates who could not identify their

potential attackers. In other words, his allegation merely paraphrases the relevant standard and is

thus insufficient to state a basis for *Monell* liability. *See, e.g., Groman v. Twp. of Manalapan*, 47

F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more,

are not sufficient to state a claim under *Monell*); *Young v. City of Chester, PA*, 764 F. App'x 262,

265 (3d Cir. 2019) (conclusory allegations regarding municipality's policies failed "to satisfy the

'rigorous standards of culpability and causation' required for municipal liability") (quoting

*McTernan*, 564 F.3d at 658); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa.

2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient

to state a claim for § 1983 liability under *Monell*"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018); *Phillips*

*v. Northampton Cnty.*, 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*) (affirming dismissal of

*Monell* claims where the complaint contained "wholly conclusory and highly generalized

assertions about unspecified patterns of misconduct" based on "no facts to support the existence

of any policy, custom, or practice beyond those involving [the plaintiff's] own [experiences]").

16

Accordingly, any official capacity claims are not plausible and the Motion will be granted as to

Maldonado's official capacity claims.

## V. CONCLUSION

For the foregoing reasons, the motion to dismiss pursuant to Rule 12(b)(6) will be denied

as to Maldonado's failure to protect claim against Defendants Wendling and Germer.  Defendants

Wendling and Germer will be required to respond to the SAC in accordance with Federal Rule of

Civil Procedure 15(a)(3) with respect to this claim.

However, the motion to dismiss will be granted as to the following claims: (1) the

conditions of confinement claim based on the time Maldonado spent on HABA status following

the attack; (2) the First Amendment retaliation; (3) any claims against LCP; and (4) any official

capacity claims.  These claims will be dismissed with prejudice.  Warden Steberger and LCP will

be terminated as Defendants in this matter.  Additionally, the Court will grant Defendants' motion

to strike the TAC for failure to comply with the Federal Rules of Civil Procedure, as it was

unauthorized and does not cure the defects in his claims.  *See* Fed. R. Civ. P. 12(f) and 15(a).

Maldonado's most recent motion to proceed *in forma pauperis* will be denied as moot.

An appropriate Order follows.

**BY THE COURT:**

**/s/ Mitchell S. Goldberg**
**MITCHELL S. GOLDBERG, J.**